Christopher R. LeClerc, Esq. (SB# 233479)
**LE CLERC & LE CLERC LLP**
235 Montgomery Street, Suite 1019
San Francisco, CA 94104
Telephone: (415) 445-0900
Fax: (415) 445-9977
Email: chris@leclerclaw.com

Attorneys for Plaintiff
FRED NAZIF

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRED NAZIF, an individual, | Case No. C13-05498 EMC |
| Plaintiff, | **STIPULATION AND [PROPOSED] ORDER TO ALLOW FILING OF AN AMENDED COMPLAINT** |
| v. | |
| COMPUTER SCIENCES CORPORATION, a Nevada Corporation; and DOES 1-50, inclusive, | |
| Defendants. | |

This stipulation is entered into by Christopher LeClerc on behalf of Fred Nazif ("Plaintiff") and F. Daniel Wood, Jr. on behalf of defendant Computer Sciences Corporation ("CSC"). The parties hereby stipulate as follows:

WHEREAS Plaintiff filed a complaint on October 25, 2013 in California Superior Court;

WHEREAS Defendant removed the action to the Northern District of California on November 27, 2013 and answered on December 4, 2013;

WHEREAS the parties have only, within the past week, conducted a Rule 26(f) conference and will commence discovery in this matter;

WHEREAS Plaintiff seeks to file an amended complaint adding a cause of action for retaliation under Dodd-Frank Wall Street Reform and Consumer Protection Act.

WHEREAS Plaintiff's Amended Complaint is submitted concurrently herewith in accordance with Civil Local Rule 10-1;

WHEREAS pursuant to Federal Rule of Civil Procedure 15(a)(2), defendant CSC consents to the filing of Plaintiff's Amended Complaint;

WHEREAS by consenting to the filing of an Amended Complaint, CSC is not in any way conceding the truth of any factual allegation in the Amended Complaint or the legal or factual adequacy of any claim in the Amended Complaint.

IT IS THEREFORE STIPULATED AND AGREED AS FOLLOWS:

1. That pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff's Amended Complaint shall be the now-operative pleading in the above captioned litigation;
2. That pursuant to Federal Rule of Civil Procedure 15(a)(3), CSC shall have 30 days from service of the Amended Complaint in which to answer or otherwise respond to the Amended Complaint.

In accordance with N.D. Cal General Order 45, Section X, the filer of this document hereby attests that concurrence in the filing of this document has been obtained from the other signatory hereto.

IT IS SO STIPULATED:

Dated: March 10, 2014			**Le Clerc & Le Clerc LLP**

By: /s/ *Christopher R. LeClerc*
Christopher R. LeClerc, Esq.
Attorneys for Plaintiff FRED NAZIF

Dated: March 10, 2014			**The Kullman Firm**

By: /s/ *F. Daniel Wood, Jr.*
F. Daniel Wood, Jr., Esq.
Attorneys for Defendant COMPUTER SCIENCES CORPORATION

## ORDER

**Based on the foregoing stipulation and good cause appearing, IT IS SO ORDERED.**

DATE: 3/13/14 _____

**Edward M. Chen
Judge of the United States District Court**

*[Seal: UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA]*
*[Stamp: IT IS SO ORDERED / Judge Edward M. Chen]*

Christopher R. LeClerc, Esq. (SB# 233479)
**LE CLERC & LE CLERC LLP**
235 Montgomery Street, Suite 1019
San Francisco, CA 94104
Telephone: (415) 445-0900
Fax: (415) 445-9977
Email: chris@leclerclaw.com

Attorneys for Plaintiff
FRED NAZIF

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FRED NAZIF, an individual, | Case No. C13-05498 EMC |
| Plaintiff, | **PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES FOR:** |
| v. | 1. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** |
| COMPUTER SCIENCES CORPORATION, a Nevada Corporation, and DOES 1-50, inclusive, | 2. **RETALIATION IN VIOLATION OF LABOR CODE SECTION 1102.5 & 98.6** |
| Defendants. | 3. **RETALIATION FOR ENGAGING IN DODD-FRANK PROTECTED ACTIVITY UNDER THE DODD-FRANK WALL STREET REFORM & CONSUMER PROTECTION ACT 15 U.S.C. § 78u-6(h)(1)(B)(i)** |
| | **JURY TRIAL DEMAND** |

Plaintiff alleges as follows:

## *PARTIES*

### *PLAINTIFF*

1. Plaintiff FRED NAZIF ("Plaintiff" or "NAZIF") is an adult male residing in San Francisco, California. At all relevant times, until his unlawful termination described *infra*, Plaintiff was employed by Defendant COMPUTER SCIENCES CORPORATION in San Francisco, California.

### *DEFENDANTS*

2. Defendant COMPUTER SCIENCES CORPORATION ("CSC") is a corporation providing computer software and information technology services throughout the United States and the world, with its corporate headquarters located in Falls Church, Virginia. It is a publicly traded corporation on the NYSE with the ticker symbol CSC. CSC is subject to the jurisdiction of the U.S. Securities and Exchange Commission and makes public filings under applicable federal and state securities regulations.

3. The true names and capacities of defendants sued in the Complaint under the fictitious name of DOES 1 through 50, inclusive, are unknown to plaintiff who therefore sues defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of said fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by such unlawful conduct.

4. Hereinafter, CSC and DOES 1 through 50 are collectively referred to as "Defendants."

5. Whenever reference is made in this complaint to any act of any corporate or other business entity defendant, such allegations shall mean that such defendant did the acts alleged in the complaint through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority. Additionally, whenever reference is made to any act of any natural person

1 employed by any corporate or other business entity Defendant, such allegations shall mean that such person did the acts alleged in the complaint while acting within the scope of their actual or ostensible authority.

6. Plaintiff is informed and believes and thereon alleges that at all relevant times, each Defendant, and each of its agents, acted as an agent, representative, employer and/or employee of each of the other defendants and acted within the course and scope of said agency or representation or employment with respect to the causes of action in this complaint.

## *JURISDICTION & VENUE*

7. Plaintiff brings this action pursuant to and under the California Labor Code and related regulations, and other common and statutory laws.

8. Venue is proper in this Court because the acts and/or omissions and events set forth in this Complaint occurred in whole or in part in San Francisco County, California.

9. Plaintiff was employed by CSC in San Francisco County, California.

10. State policy favors jurisdiction and venue in San Francisco County, California, because the State of California has a policy of protecting California residents and ensuring the applicability of California laws.

11. Plaintiff is informed and believes, and thereon alleges, that witnesses and evidence relevant to this case are located in San Francisco County, California.

12. Plaintiff is informed and believes, and thereon alleges, that the relative costs and burdens to the parties herein favor the filing of this lawsuit in this Court. Defendant suffers no burden or hardship by having to defend this case in this Court. However, Plaintiff would suffer severe and undue burden and hardship if he was required to file in an alternative forum, if any such forum exists. Such burden and hardship on Plaintiff includes, but is not limited to, prohibitive monetary expenses for travel, obtaining counsel in a different venue and/or jurisdiction, increased expenses to investigate and obtain evidence and depose and interview witnesses.

13. The amount in controversy exceeds the minimum jurisdictional threshold of this Court.

### GENERAL FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14. Plaintiff was hired as a Technical Accounting Director for Defendant CSC in June 2012 after four-month interview process that included a background check, employment and education verifications). He was told that he would report to Ms. April Hand, and that he would be compensated $140,000 per year in base salary, benefits, and that he would be eligible for a bonus of up to 20% of his base salary.

15. A seasoned financial professional, Mr. Nazif brought more that fifteen years of relevant experience to his job at CSC, during which time he held accountancy positions at various high-technology companies, including Hewlett Packard and Cisco. Prior to his departure from Iran, he held the position of Senior Adviser to the Secretary of Heavy Industry. He is a Certified Public Accountant, a Member of American Institute of Certified Public Accountants and a Member of The California Society of Certified Public Accountants.

16. Prior to starting with CSC, Plaintiff learned that CSC was the defendant in a massive securities class action alleging, *inter alia*, failure of internal controls and accounting fraud. That matter recently resolved for $97.5 million. (*See, e.g.,* www.cscsecuritieslitigation.com.) He was told that, as a result, CSC was working towards resolving issues related to its internal controls.

17. Shortly after he was hired and utilizing his many years of successful experience, Plaintiff became very concerned because it appeared as though CSC was not improving the controls on its accountancy and revenue recognition and reporting practices, but instead was utilizing improper accounting practices and revenue recognition practices to inflate the revenue it reported in its SEC filings.

18. The following are to serve as exemplars of the improper accounting observed by Plaintiff, and are no means intended to be an exhaustive list:

    a) In reviewing CSC's contract with a client, Plaintiff noted that the contract provided for an unspecified platform transfer right; that is, a right granted

by CSC to transfer software from one hardware platform or operating system to one or more other hardware platform or operating systems. Per standard software revenue recognition practices, where unspecified platform transfer rights exist, the software revenue must be recognized ratably over the estimated economic life of the products, beginning with delivery of the product. CSC did not recognize the revenue ratably, and, in fact, reported inflated revenue numbers. When Plaintiff raised concerns about this with his supervisors, including his direct supervisor, Ms. Hand, and the Comptroller, John Dube, and questioned whether such improper practices were systemic within CSC, he was taken off the specific account and frozen out of the project.

b) In reviewing CSC's contract with a client, Plaintiff noted that CSC did not properly account for free services and warranties granted to the client. Plaintiff suggested that CSC launch an internal review of all of the contracts CSC had with its customers to see if this was a more widespread problem. In response to Plaintiff's concerns, Plaintiff's supervisors took him off of the account and froze him out of the project.

c) Vendor-specific objective evidence (VSOE) is a method of revenue recognition allowed by US GAAP that enables companies to recognize revenue on specific items on a multi-item sale based on evidence specific to a company that the product has been delivered, provided all other requirements of revenue recognition have been met. In order to take advantage of this early revenue recognition methodology in accordance with GAAP, the selling company must establish vendor-specific objective evidence of fair value for each separate product or service promised under the contract. Accordingly, it was essential for CSC's bottom line profit and loss numbers that VSOE be properly established because without it

being established, it could not appropriately recognize software revenue up front. However, Mr. Nazif became aware that CSC did not properly prepare VSOE for various contracts for which it was recognizing revenue up front. Again, he brought this to the attention of his supervisor, Ms. Hand, in July 2012, to Chief Accounting Officer, Michael Sweeney, in November 2012, and again to Ms. Hand in late-December 2012. To Mr. Nazif's knowledge, the revenue recognition problem was never corrected, and he was terminated from his position just a few weeks after his complaints about these practices.

d) CSC routinely capitalized software costs rather than expensing those costs related to the business which offsets revenue. This again served to improperly inflate CSC's reported bottom line profit. Mr. Nazif became aware of CSC's practice of capitalizing software costs based on minor enhancements to the software. On several occasions, Mr. Nazif spoke to his supervisor, Ms. Hand about his concern that these minor enhancements did not qualify for capitalization. Ms. Hand informed Mr. Nazif that it was simply CSC's practice to capitalize software costs based on minor enhancements, and that most such capitalization costs would be "rubber stamped" by the accounting department. She strongly suggested that Mr. Nazif should follow suit.

e) Plaintiff became aware that CSC and its constituent business segments were failing to properly review all contracts for their particular clients in order to evaluate whether or not those contacts met the definition of related contracts, such that they should be treated as a single arrangement for revenue recognition purposes. Mr. Nazif initiated several conversations with his supervisor, Ms. Hand regarding this matter. However, she indicated that CSC did not have the contract-management

1         tools necessary to capture the information needed to make the related contract determinations. Mr. Nazif went so far as to send her an email on or about August 14, 2012 detailing suggestions to improper contract management. He received no substantive response to the suggestions. He raised these concerns again with Mr. Sweeney in mid-November 2012; however to his knowledge no action was ever taken.

19. In response to Plaintiff's complaints about failures of internal controls and revenue recognition, rather than remedy the failures in GAAP, Defendant transferred Plaintiff off of projects and limited his access to work on further projects.

20. In December 2012, Plaintiff was informed that he was terminated on January 9, 2013 as the result of a structural reorganization. He received no explanation as to why the purported structural reorganization had apparently not been foreseen at the time of his hire just months earlier. Plaintiff was in fact terminated on that date. Another individual was hired with the same job title as Plaintiff just prior to Plaintiff's termination and he remained in that role even after Plaintiff's termination. Additionally, shortly after his termination, CSC advertised Plaintiff's position on the internet.

21. Plaintiff is informed, believes and thereon alleges that his termination was motivated in part because of his insistence that CSC not violate GAAP in its public filings that it certified were prepared in compliance with GAAP. Additionally, Plaintiff is informed and believes and thereon alleges that Defendant terminated Plaintiff's employment in violation of numerous public policies, including without limitation, the public policies against fraud in the workplace, fraud on the market, and retaliation against those who refuse to participate in fraud.

//
//
//
//

- 6 -
AMENDED COMPLAINT FOR DAMAGES
NAZIF V. COMPUTER SCIENCES CORPORATION (N.D. CAL., CASE NUMBER C13-05498 EMC)

# FIRST CAUSE OF ACTION
Wrongful Termination in Violation of Public Policy
[Against All Defendants]

22. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in this complaint as though fully set forth herein.

23. California has a fundamental, substantial, and well-established public policies against retaliating against an employee for opposing and refusing to participate in corporate fraud, internally raising concerns related to unlawful activities, and/or by refusing to participate in activities that would result in a violation or noncompliance of state and/or federal law, rule or regulation. (*See, e.g.,* Labor Code § 1102.5.)

24. Plaintiff is informed and believes and thereon alleges that one or more of the motivating reasons for Plaintiff's termination was because of his complaints of, opposition to, and active participation against CSC's fraudulent conduct.

25. Defendants' termination of Plaintiff has caused him economic and noneconomic harm in an amount to be proven at trial, but which is in excess of the minimum jurisdiction of this court. Plaintiff's damages include, but are not limited to, loss of earnings and benefits, humiliation, embarrassment, mental and emotional distress and discomfort.

26. Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice, in conscious disregard for Plaintiff's rights and thus an award of exemplary and punitive damages is justified. Plaintiff is therefore entitled to recover and herein prays for punitive damages.

WHEREFORE, Plaintiff prays for judgment, including punitive damages, as more fully set forth below.

# SECOND CAUSE OF ACTION
Retaliation in Violation of Labor Code §§ 1102.5(c) & 98.6
[Against All Defendants]

27. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in this complaint as though fully set forth herein.

28. Defendant's conduct, as alleged in this complaint, violates numerous federal and state statutes.

29. Plaintiff engaged in activities in opposition to CSC's unlawful conduct, including without limitation reporting, opposing, investigating, and trying to prevent CSC's fraud.

30. Plaintiff is informed and believes and thereon alleges that Defendants did willfully retaliate against Plaintiff for engaging in the acts alleged herein by terminating his employment.

31. Defendants' termination of Plaintiff has caused him economic and noneconomic harm in an amount to be proven at trial, but which are in excess of the minimum jurisdiction of this court. Plaintiff's damages include, but are not limited to, loss of earnings and benefits, humiliation, embarrassment, mental and emotional distress and discomfort.

32. Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice, in conscious disregard for Plaintiff's rights and thus an award of exemplary and punitive damages is justified. Plaintiff is therefore entitled to recover and herein prays for punitive damages.

WHEREFORE, Plaintiff prays for judgment, including punitive damages, as more fully set forth below.

### THIRD CAUSE OF ACTION
Retaliation for Engaging in Dodd-Frank Protected Activity under the Dodd-Frank Wall Street Reform & Consumer Protection Act 15 U.S.C. § 78u-6(h)(1)(B)(i)
[Against All Defendants]

33. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in this complaint as though fully set forth herein.

34. By engaging in the above-described improper revenue-reporting practices which served to inflate CSC's revenue, CSC violated federal securities laws.

35. In raising concerns with CSC's management team of CSC's failure to properly report revenue, Plaintiff engaged in protected activity under the Dodd-Frank Wall Street Reform

1. & Consumer Protection Act 15 U.S.C. § 78u-6(h)(1)(B)(i) ("the Dodd-Frank Act"), which protected activity includes acts required or protected under, *inter alia*, the Sarbanes-Oxley Act and the Securities Exchange Act of 1934, section 10A(m) (accounting and auditing matters).

36. After raising his concerns with his managers regarding CSC's failure to comply with permitted revenue-reporting practices which failure served to improperly inflate CSC's reported revenue, Plaintiff was abruptly terminated by CSC.

37. For retaliation in violation of the Dodd-Frank Act, Plaintiff is entitled to such legal and equitable relief to effectuate the purposes of the Dodd-Frank Act, including, *inter alia*, employment reinstatement, double back pay with interest, front pay, compensatory damages, and attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment, including punitive damages, as more fully set forth below.

### *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff makes the following demand:

a) For general, special, actual, compensatory and/or nominal damages, as against Defendants, and each of them, in an amount to be determined at trial, in an amount believed to be well in excess of $75,000;

b) For front and back pay and other benefits Plaintiff would have been afforded but-for Defendants', and each of their, unlawful conduct;

c) For double damages and reinstatement pursuant to the Dodd-Frank Act.

d) For punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendants, and each of them, from further engaging in the conduct described herein, and to deter others from engaging in the same or similar acts;

e) For appropriate civil and statutory penalties;

f) For costs and expenses of this litigation;

g) For reasonable attorneys' fees where appropriate;

h) For pre- and post-judgment interest on all damages and other relief awarded herein from all entities against whom such relief may be properly awarded; and,

i) For all such other relief as this Court deems just and appropriate.

Dated:  March 10, 2014                           LE CLERC & LE CLERC LLP

By: *Christopher R. LeClerc*
Christopher R. LeClerc, ESQ.
Attorney for Plaintiff
FRED NAZIF

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated:  March 10, 2014                           LE CLERC & LE CLERC LLP

By: *Christopher R. LeClerc*
Christopher R. LeClerc, ESQ.
Attorney for Plaintiff
FRED NAZIF